UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NATIONAL FIRE INSURANCE COMPANY
OF HARTFORD, a Connecticut corporation,

     Plaintiff,

v.

                             CASE NO:  97-2439 CIV-KING

FORTUNE CONSTRUCTION COMPANY,
a Florida corporation,

     Defendant.



_____/

COURT'S INSTRUCTIONS TO THE JURY

Members of the Jury:

     I will now explain to you the rules of law that you must follow and apply in deciding this

case.

     When I have finished you will go to the jury room and begin your discussions-what we call

your deliberations.

In deciding the case you must follow and apply all of the law as I explain it to you, whether you agree with that law or not; and you must not let your decision be influenced in any way by sympathy, or by prejudice, for or against anyone. A corporation and all other persons stand equal before-the law and must be dealt with as equals in a court of justice.

When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for any of the acts and statements of its employees which are made within the scope of their duties as employees of the company.

In your deliberations you should consider only the evidence — that is, the testimony of the witnesses and the exhibits I have admitted in the record — but as you consider the evidence, both direct and circumstantial, you may make deductions and reach conclusions which reason and common sense lead you to make. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, an ultimate conclusion.

Remember that anything the lawyers say is not evidence in the case. It is your own recollection and interpretation of the evidence that controls.

Now, in saying that you must consider all of the evidence, I do not mean that you must accept all of the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. Also, the number of witnesses testifying concerning any particular dispute is not controlling. You may decide that the testimony of a smaller number of witnesses concerning any fact in dispute is more believable than the testimony of a larger number of witnesses to the contrary.

In deciding whether you believe or do not believe any witness I suggest that you ask yourself a few questions: Did the person impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to observe accurately the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness's testimony differ from other testimony or other evidence?

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony he or she gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

When knowledge of a technical subject matter might be helpful to the jury, a person having special training or experience in that technical field — one who is called an expert witness — is permitted to state his or her opinion concerning those technical matters.

Merely because an expert witness has expressed an opinion, however, does not mean that you must accept that opinion.  The same as with any other witness, it is up to you to decide whether to rely upon it.

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters at issue at this trial.  Nor does the law require any party to produce as exhibits, all papers and things mentioned as evidence in this case.

In this case each party has the responsibility to prove every essential part of his contention by a "preponderance of the evidence."  This is sometimes called the "burden of proof" or the "burden of persuasion."  In this case, National Fire has the burden of proof to establish the amount it paid to payment bond claimants.  Fortune has the burden of proof to establish the reasonable costs of completion.

A "preponderance of the evidence" simply means an amount of evidence which is enough to persuade you that a claim or contention is more likely true than not true.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence you should find against the party making that claim or contention.

The Court has found, as a matter of law, that National Fire has a right to recoup payments it made under the payment bonds from the unpaid balance of the subcontract. This right is superior to Fortune's right to apply the unpaid balance of the subcontract to claims that it may have against Arkin. The Court having so determined, this issue is not for your consideration.

The Court has also previously determined that, at this juncture, the reasonable costs of completing construction are to be credited against the contract balance. To the extent those costs exceed the contract balance, National Fire is obligated pursuant to the performance bond to pay the difference to Fortune. Conversely, to the extent the contract balance exceeds the reasonable costs of completing construction, the excess is to be paid to National Fire up to the amount of National Fire's payment bond expenditures.

Thus, the issues for your consideration are, for both the Winston Park and West Brickell projects:

(1)     What amount did National Fire pay to payment bond claimants;

(2)     What was the amount of the unpaid contract balance at the time of default by Arkin;

(3)     What was the reasonable cost to complete the project after the default of Arkin;

(4)     If you find that the reasonable cost to complete the project after the default of Arkin is less than the amount of the unpaid contract balance at the time of default by Arkin, then the remaining unpaid contract balance must be paid to National Fire to the extent that National Fire made payments to payment bond claimants on that project;

(5)     If you find that the reasonable cost to complete the project after the default of Arkin is more than the amount of the unpaid contract balance at the time of default by Arkin, then National Fire must pay Fortune the amount of that overage.

It is agreed by the parties that the original amount of Arkin's subcontract for the Winston Park project was $10,670,000 and the original amount of Arkin's subcontract for the West Brickell project was $4,585,856.  You should also consider any amendments known as change orders, between Arkin and Fortune that modified these original contract prices.

In determining the cost to complete each project, you must consider that Fortune was required to act reasonably to minimize the expenses incurred in completing the project, and is not permitted to charge expenses or payments that could reasonably have been avoided or lessened by making reasonable efforts.

If you find that Fortune could have avoided part of its completion expenditures through reasonable efforts, then you should not include such costs in your calculation of the reasonable cost of completion.

In determining the reasonable cost to complete each project, you must consider whether any of the expenses incurred by Fortune arose due to deficiencies in the design, plans or specifications. Fortune is bound by a warranty that the design, plans or specifications it provided to Arkin were suitable and accurate for constructing the project. Any charges, expenses, or damages incurred as a result of deficient design, plans and specifications, or to remediate problems that arose due to deficiencies in the design, plans, or specifications, may not be included in your calculation of the reasonable cost of completion.

You are instructed that as a matter of law, between National Fire and Fortune, Fortune had the obligation to administer the contract performance of Arkin.  This obligation included the responsibilities to assure that the work was performed properly by Arkin.

In determining the reasonable cost to complete the projects, the Court has previously determined that certain damages and consequential post default costs that may have been incurred by Fortune must not be considered part of the reasonable cost to complete the projects and may not be assessed against National Fire.  These include:

 (1)  delay damages, including liquidated damages specified in the Arkin subcontracts;

 (2)  damages relating to Fortune's electrical overage claim;

 (3)  damages relating to Fortune's Davis-Bacon Act claim.

While these items may constitute proper claims against Arkin, they are not to be considered part of the reasonable cost to complete the projects and may not be applied against National Fire.

A bond is a contract. To prevail on a claim for breach of contract, a party must prove three things: (1) the existence of a contract; (2) a breach of that contract, and; (3) damages resulting from the breach.

A breach of contract is a failure, or refusal, without justifiable excuse, to perform an obligation under an agreement.

In determining whether a contract has been breached, you are not to consider whether you think the terms of the contract were fair or what you think the terms of the contract should have been. Your job is to determine whether one party or the other failed in an obligation imposed by the contract.

Words and phrases used in contracts are to be given a natural and commonly understood meanings.   Parties who enter into a contract are presumed to understand the agreement that they sign and are presumed to know the law.

You instructed that each party to a contract has the obligation to act with good faith cooperation in the performance of the contract. Where that cooperation is withheld, the withholding party has breached the contract and may not avail itself of his own wrongdoing.

As to the performance bond with regard to Tract "G" at Winston Park and West Brickell, the term "balance of the contract price" as used in the bond means the total amount payable by Fortune to Arkin under the subcontract concerning the project and any amendments thereto, less the amounts properly paid by Fortune to Arkin.

A party is entitled to recover as damages for a breach of contract a sum of money that will compensate the party fairly and justly for all things separate as a direct and proximate result of the breach, provided that such damages reasonably should have been foreseen by the parties and were within the contemplation of the parties at the time the parties entered into the contract.

Uncertainty of the amount or difficulty of proving the amount of damages does not prevent recovery by a party when substantial damages have been suffered by that party.  Evidence of a proximate estimate of the damage sustained is sufficient proof of amount.

The purpose of an award of damages in a breach of contract action is to place the injured party in the same financial position as it would have occupied if the contract had been fully performed. The measure of damages caused by breach of contract is the loss naturally and proximately resulting from the breach or such as may reasonably have been within the contemplation of both parties at the time that they made the contract as the proper and natural result of the breach.

In determining whether National Fire breached the performance bond, you must accept that the Court has previously determined that National Fire had no obligation to complete the project itself or to tender a completion contractor.  Rather, National Fire's only performance bond obligation is to pay any excess, should it exist, of the reasonable cost to complete by Fortune over the contract balance at the time of default by Arkin.

The Court has also previously determined that National Fire had no obligation to fund Arkin and that funding Arkin for a period of time did not give rise to any obligation to continue to finance. Further, the Court has previously determined that, after Arkin's default, Fortune completed the project on a timely basis.

Your verdict must be based on the evidence that has been received and the law on which I have instructed you.  In reaching your verdict, you are not to be swayed from the performance of your duty by prejudice, sympathy or any other sentiment for or against any party.

Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than that given in the instructions of the court, just as it would also be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything other than the evidence in the case.

In closing, let me remind you that it is important that you follow the law spelled out in these instructions in deciding your verdict.  There are no other laws that apply to this case.

Any verdict you reach in the jury room must be unanimous. In other words, to return a verdict you must all agree. Your deliberations will be secret; you will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case do not hesitate to re-examine, your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember, that in a very real way you are judges — judges of the facts. Your only interest is to seek the truth from the evidence in the case.

When you go to the jury room you should first select one of your members to act as your foreperson. The foreperson will preside over your deliberations and will speak for you here in court.

A form of verdict has been prepared for your convenience.

[Explain verdict]

You will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.